IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARSAAN L. NEWMAN, )
)
      Plaintiff, )
)
v. ) Civ. No. 12-664-SLR
)
C/O C. JOHNSON, )
)
      Defendant. )

---

Marsaan L. Newman, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

Joseph Clement Handlon and Michael F. McTaggart, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

---

**MEMORANDUM OPINION**

Dated: December 3, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Marsaan L. Newman ("plaintiff"), an inmate at the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He proceeds pro se and has been granted leave to proceed without prepayment of fees. Presently before the court are defendant's motion for summary judgment (D.I. 27) and plaintiff's motion for leave to file an amended answering brief (D.I. 39) and motion to compel discovery (D.I. 42). The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will grant defendant's motion for summary judgment and will deny plaintiff's motions.

## II. BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by virtue of defendant's alleged failure to protect him from harm. The complaint alleges that on March 13, 2012, plaintiff and another inmate engaged in a verbal altercation. Plaintiff tried to go to his cell, but a fight ensued that lasted well over four minutes. Plaintiff alleges that it was obvious there would be a fight, and the officer did not perform his duty to intervene to stop the fight. Plaintiff alleges that Johnson did not call a code, and he later reported that he tried to call a code twice, but his walkie-talkie was not working properly. As a result of the fight, plaintiff was seriously injured and had to be taken to the local hospital. Plaintiff concludes that, had the walkie-talkie worked properly, the assault would not have lasted long. (D.I. 2)

The evidence of record is that defendant witnessed plaintiff and inmate Anderson ("Anderson") exchange words, that plaintiff got up from his seat, "went directly" to Anderson, and both inmates began to throw punches at each other. (D.I. 29, ex. A

Johnson decl.; incident report 3053656) Johnson made two Code 8 calls from his radio, but they were not transmitted. (*Id.* at ex. A Johnson decl.) Defendant alerted C/O John L. McMullin ("McMullin") of the fight who immediately called a Code 8 with his radio. (*Id.* at ex. A Johnson decl.; ex. A, incident report 3053656; ex. B McMullin decl.) According to McMullin, Johnson requested that McMullin call the Code 8 within a "few seconds" after defendant realized his walkie-talkie was not transmitting. (*Id.* at ex. A Johnson decl.; ex. B McMullin decl.) Neither McMullin nor defendant had immediate access to the area where the fight occurred. (*Id.*)

Corporal William Roemer ("Roemer"), a member of the Quick Response Team ("QRT") who responded to the fight, was contacted by primary control at 9:23 a.m. that a fight was in progress and he and another correctional officer responded. (*Id.* at ex. C Roemer decl.) The QRT arrived during the fight. (*Id.* at ex. A Johnson decl.) Plaintiff and Anderson were separated and immediately treated for their injuries. (*Id.* at ex. C) HRYCI log books dated March 13, 2013, indicate that the fight broke out at approximately 9:23 a.m. and was under control (i.e., "10-1") by 9:26 a.m. (*Id.* at ex. D Bamford decl.)

Plaintiff did not submit a grievance regarding the March 13, 2012 incident. (*Id.* at E) Plaintiff acknowledges that he did not submit a grievance because he was hospitalized for four days and then spent four or five days in the HRYCI infirmary and did not have access to grievances for submission within seven days after the incident as is required. (D.I. 33)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendant moves for summary judgment on the grounds that: (1) there is no evidence that he was deliberately indifferent to plaintiff's safety in violation of the constitution; (2) he is immune under the doctrine of qualified immunity; and (3) plaintiff failed to exhaust his administrative remedies as is required by the Prison Litigation Reform Act ("PLRA"). Plaintiff opposes the motion. Some two months after plaintiff filed his opposition and defendant filed his reply, plaintiff moved for leave to file an amended answering brief. (See D.I. 33, 38, 39) The motion is untimely.[1] In addition, as will be discussed, plaintiff failed to exhaust his administrative remedies and, therefore, there is no need for an amended opposition.

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Plaintiff acknowledges that he did not submit a grievance regarding the March 13, 2012 incident because he was either in the hospital or in the infirmary. The evidence of record is that plaintiff did not submit a grievance once he was discharged from the infirmary.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

---

[1]Similarly, plaintiff filed an untimely motion to compel, construed by the court as a request for production of documents. (D.I. 42) The motion was filed after completion of briefing of defendant's motion for summary judgment. The motion to compel states that plaintiff served discovery requests upon defendant in January 2014. However, the court docket indicates that, rather than serve discovery on defendant in January 2014, plaintiff responded to discovery propounded upon him by defendant. (See D.I. 25, 26) The discovery deadline expired on February 25, 2014, and plaintiff fails to provide good cause to reopen discovery Therefore, the court will deny the motion to compel.

4

available are exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. Jones v. Bock, 549 U.S. 199 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Under Woodford v. Ngo, 548 U.S. 81 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 88. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id. at 95.

"'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (quoting Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004), and an inmate must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. Nickens v. Department of Corr., 277 F. App'x 138, 152 (3d Cir. 2008) (unpublished) (citations omitted). Delaware Department of Correction ("DOC") administrative procedures provide for a multi-tiered

5

grievance and appeal process. (D.I. 28, ex. E DOC Policy 4.4 (effective date Sept. 26, 2011). First, the prisoner must file a grievance within seven days with the Inmate Grievance Chair, for an attempt at informal resolution; second, if unresolved, the grievance is forwarded to the Resident Grievance Committee ("RGC") or Local Subject Matter Expert ("SME") for hearing and recommendations which are forwarded to the facility warden or appropriate bureau-level SME for a decision; and third, the Bureau Grievance Officer conducts the final level of review. *Id.*

Plaintiff states that he was unable to timely submit a grievance due to his medical condition. However, "[t]here is no futility exception to the exhaustion requirement." *Booth*, 532 U.S. at 731 n.6. Moreover, in the absence of competent proof that an inmate was misled by corrections officials, was impeded in filing a timely grievance, or some other extraordinary circumstances intervened and prevented compliance with the grievance process, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. An inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (unpublished) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance). In the instant case, plaintiff made no attempt to exhaust his administrative remedies once his alleged impediments (e.g., hospital and infirmary stays) were removed.

Because there is no evidence that plaintiff submitted a grievance, he failed to exhaust all available remedies as is required by the PLRA. *See, e.g., Jetter v. Beard*,

6

183 F. App'x 178 (3d Cir. 2006) (unpublished) (inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. Accordingly, the court will grant defendant's motion for summary judgment.

### B. Failure to Protect/Intervene

In the alternative, the evidence of record does not support a finding that defendant violated plaintiff's constitutional rights. To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994); see also Griffin v. DeRosa, 153 F. App'x 851 (3d Cir. 2005) (unpublished). Similarly, a corrections officer's failure to intervene in a beating can be the basis of liability under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).

Plaintiff opposes the motion for summary judgment arguing that defendant failed to protect or intervene because his radio did not work and because he overheard Anderson taunting plaintiff prior to their altercation. The record reflects that defendant overheard the exchange between plaintiff and Anderson. However, there is nothing in the record to indicate defendant knew that, as a result of the verbal exchange, the two inmates would come to blows. Notably, defendant had no direct access to the area where the fight happened. Once the fight began, defendant took steps to end it. He called a Code 8 and, when he realized his radio did not transmit the code, defendant

7

contacted another correctional officer who immediately called a Code 8 whereupon the QRT arrived and broke up the fight. At most, the entire incident lasted two to four minutes. The evidence of record does not support a finding that defendant acted with deliberate indifference towards plaintiff's safety.

In light of the foregoing, no reasonable jury could find that Johnson violated plaintiff's constitutional rights.[2] Therefore, the court will grant defendant's motion for summary judgment.

## V. CONCLUSION

For the reasons discussed above, the court will grant defendant's motion for summary judgment and will deny plaintiff's motions. (D.I. 27, 39, 42)

An appropriate order will be entered.

---

[2]The court finds no need to address the issue of qualified immunity inasmuch as defendant did not violate plaintiff's constitutional rights.

8